IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| GLENN DOLFI,<br><br>    Plaintiff,<br><br>v.<br><br>KENT MARKUS, in his official capacity as Bar Counsel for the COLUMBUS BAR ASSOCIATION;<br>HOLLY WOLF, in her official capacity as Bar Counsel for the COLUMBUS BAR ASSOCIATION; and<br>ELIZABETH T. SMITH, in her official capacity as Director of the OHIO BOARD OF PROFESSIONAL CONDUCT,<br><br>    Defendants. | Case Number 26-287<br><br>Judge |

**COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW, Plaintiff Glenn Dolfi, by and through undersigned counsel, and brings this Complaint against Kent Markus and Holly Wolf, each in their official capacity as Bar Counsel for the Columbus Bar Association, and Elizabeth T. Smith, in her official capacity as Director of the Ohio Board of Professional Conduct (collectively, Defendants"). In support thereof, Dolfi states as follows:

    1.    Plaintiff Glenn Dolfi is a natural person and resident of Columbus, Ohio. He is licensed to practice law in the State of Ohio and maintains his practice in Columbus, Ohio. He is required by the Ohio Supreme Court Rules for the Government of the Bar to cooperate with and be subject to the Columbus Bar Association grievance committee investigations.

2. Defendant Kent Markus is Bar Counsel for the Columbus Bar Association. In his official capacity, he is charged with initiating and overseeing investigations of Columbus Bar Association members. In his discretion, he is authorized by the Ohio Board of Professional Conduct (the "Board") to file complaints for probable cause certification alleging ethics violations with the Board. Upon information and belief, Markus is the senior Bar Counsel responsible for the Columbus Bar Association. His authority includes the power to issue administrative and investigative subpoenas on behalf of the Columbus Bar Association.

3. Defendant Holly Wolf also serves as Bar Counsel for the Columbus Bar Association, and has all the same rights, responsibilities, and authority as Defendant Markus.

4. Defendant Elizabeth Smith is the present Director of the Ohio Board of Professional Conduct, over whose name the subpoenas in question are presently issued.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. This court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), as this action seeks to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this judicial district, and Defendants can be found in this district, and Plaintiff resides and practices law in this district.

**Factual Allegations**

7. Mr. Dolfi is a licensed attorney in good standing with the Ohio bar and has practiced law in Columbus, Ohio since 2019. Prior to practicing law in Ohio, he was licensed to practice law in the state of Pennsylvania since 2003.

8. Since January 2023, Mr. Dolfi has owned and operated Dolfi LLC, a law firm focusing on personal injury cases.

9. Prior to starting Dolfi LLC, Mr. Dolfi was employed as an attorney at another law firm owned and operated by a former Ohio attorney, Bradley Keating.

10. The Defendants Markus and Wolf, through and with the authority of the Columbus Bar Association, opened an investigation into Mr. Keating in 2023, in connection with an alleged practice of paying for client referrals from a Florida entity.

11. Mr. Keating resigned his license to practice law in Ohio, with discipline pending, on June 30, 2023, thus staying any further investigation of Mr. Keating by Defendants. No adjudication or findings were reached by the Defendants with respect to Mr. Keating.

12. Dissatisfied with their inability to hoist Mr. Keating's license over their mantle, Defendants turned their sights to nearly every attorney ever previously associated with Mr. Keating, including Mr. Dolfi.

13. In order to investigate their suspicions of Mr. Dolfi, Defendants caused to be issued over one or both of their signatures one or more "subpoenas" to Chase Bank for Mr. Dolfi's operating accounts and trust account financial records. **(Exhibit 1.)** Mr. Dolfi did not execute any customer authorization permitting disclosure, did not receive a copy of the subpoena or receive any notice to allow for a timely motion to quash or otherwise challenge the demand, and he was not served with any certification of delayed notice as contemplated by federal law.

14. Chase Bank provided these financial records to Defendants, in compliance with Defendants' "subpoena."

15. Defendants have obtained, retained, and/or used Plaintiff's financial records and may seek to use those records in investigative, disciplinary, or other proceedings adverse to Plaintiff's interests, all without compliance with the notice and challenge procedures mandated by federal law.

16. Defendants have a pattern and practice of subpoenaing records that contain privileged and confidential information, including the financial records of trust and operating accounts from the financial institution during the course of their pre-complaint investigations.

17. These *sua sponte* initiated investigatory subpoenas are issued before any hearing panel or other adjudicative officer is appointed, under the signature of the Director of the Board of Professional Conduct via a pre-signed form that can be downloaded from the Board's website, because they are issued before the Defendants, the Columbus Bar Association and/or the Board of Professional Conduct itself has made any probable cause finding as to any allegations or even the basis for the Defendants' *sua sponte*-initiated investigations.

18. Defendants routinely initiate investigations into targets sua sponte-without any individual grievant filing a grievance against a targeted attorney. Mr. Dolfi's investigation was initiated in this manner.

19. Defendants, as a matter of course, then issue these subpoenas to third party vendors without first providing notice to the target of the subpoenas or otherwise serving them, notwithstanding the "subpoenas" themselves say they are being served in compliance with Civ.R. 45. A target of a subpoena is only entitled to learn what subpoenas were issued and what documents were produced in response **after** the Defendants cause a complaint to be certified for

4

probable cause.  Even then, unless the Petition references such pre-suit no service subpoenas, the target attorney and/or his or her clients may be forever unaware that their privileged and confidential documents were produced to the government in response to any such subpoena.

20. Defendants' use of no-notice subpoenas appears facially authorized under color of state law which was newly adopted January 1, 2011.  Ohio Supreme Court Rules for the Government of the Bar provide that "A notice of subpoena is not required to be issued to the respondent unless probable cause has been found."  Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, 6(A).

21. Upon information and belief, Ohio's specific language excluding and excepting notice to the target of the subpoena is wholly unique in the current rules governing disciplinary proceedings in all fifty states of the United States.

22. However, this conflicts with the plain language of the subpoena, if not the clear implication that the subpoena is being served in compliance with Ohio Rule of Civil Procedure 45, which provides the target of the subpoena or other party an opportunity to object, move to quash, or otherwise be heard on the subpoena **prior** to requiring the recipient's response.

23. Additionally, Regulation 6(A) *also* provides that target of the subpoena may file a motion to quash, which may be "ruled upon by the chair or vice-chair of the Board," if the subpoena is issued "prior to the appointment of a hearing panel."

24. The Regulations and the Rules, therefore, themselves purport to require notice and an opportunity to object in at least some circumstances.  Such circumstances exist when the subpoena seeks privileged or confidential information, or records that are otherwise protected by law or the Constitution.

5

25.     Further, upon information and belief, as a result of an even more recent 2019 amendment to Regulation 6, the Director of the Board of Professional Conduct exercises no discretion, and does not even have advance knowledge of when or how these pre-signed subpoenas are utilized by bar counsel, including Defendants, as the Director "shall issue a subpoena, signed but otherwise blank," for use by Defendants or other "special investigator."

26.     The present Director of the Ohio Board of Professional Responsibility is Defendant, Elizabeth T. Smith. Her name presently appears on the pre-signed, issued-in-blank subpoenas that are available online[1] evidencing there is no judicial oversight whatsoever before the issuance of these subpoenas. **(Exhibit 2**.**)**

27.     Mr. Dolfi does not have a copy of the subpoenas issued that target him, and upon information and belief, they were issued by Ms. Smith or her predecessor.

28.     Upon information and belief, these pre-suit no-notice subpoenas are frequently issued to banks, cellular providers, vendors, and other third-parties, basically any other third parties who can be identified from previously subpoenaed information.

29.     On the face of these subpoenas, these third parties are compelled, under penalty of contempt "to be punished accordingly," to produce records relating to Mr. Dolfi's law practice. Such records may include evidence of client representation, client identities, attorney-client privileged communications, attorney work product, and confidential business practices. These records also include financial information and transaction histories of not only Mr. Dolfi and his firm, but also his clients.

30.      The issuance of these no-notice administrative subpoenas has become known to members of the legal community and to current and prospective clients. As a direct and proximate

---

[1] https://www.bpc.ohio.gov/_files/ugd/c6a571_85b87bf572fd472aadb59ea51a8fdda6.pdf

6

result of Defendants' actions, current and prospective clients have become or will become reluctant to retain Plaintiff and other Ohio attorneys for legal representation due to concerns that their confidential information may be subject to compelled disclosure thus violating privilege and confidentiality without any notice or opportunity for either the attorney or the client to object to the State's interference with the attorney-client relationship.

31. Defendant Smith sent a letter to the undersigned counsel, addressing some of counsel's concerns regarding the legality, constitutionality, confidentiality, and privilege issues of Defendants' practice of serving no-notice subpoenas, in which she discounts any constitutionality or process concerns and indicates the intent for Ohio to proceed with the continued use of these no-notice subpoenas. **Exhibit 3**. As such, there is under the current scheme no adequate opportunity in any state proceeding for Mr. Dolfi to raise constitutional challenges regarding the issuance of these subpoenas before they are unilaterally issued *sua sponte* by Defendants Markus and Wolf without any judicial review whatsoever.

32. Defendants' conduct has had and continues to have a chilling effect on the willingness of individuals to exercise their First Amended right to associate with Plaintiff for the purpose of obtaining legal representation. This chilling effect extends not only to Plaintiff's practice, but also to all other Ohio attorneys, as individuals may reasonably fear that retaining any Ohio attorney could subject their confidential and/or attorney-client privileged information to similar no-notice disclosure to third parties based upon nothing more than mere suspicion and *sua sponte* initiated investigations.

33. The attorney-client relationship is a protected associational relationship under the First Amendment. Individuals have a constitutional right to associate with legal counsel of their choosing without fear of governmental intrusion or retaliation. Defendants' practice of issuing no-

7

notice administrative subpoenas to Ohio attorneys' banks, vendors, and business associates substantially burdens this constitutional right and deters individuals from freely exercising their right to legal representation in Ohio.

34. Defendants' actions were undertaken without adequate justification, without proper procedural safeguards, and in a manner that fails to satisfy the requirements of the First and Fourteenth Amendments.

## CAUSES OF ACTION

### Count I – Violation of the First Amendment Right to Freedom of Association

35. Mr. Dolfi incorporates by reference all preceding paragraphs as though fully set forth herein.

36. The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the right of individuals to freely associate for the purpose of engaging in activities protected by the First Amendment, including the right to petition the government for redress of grievances through legal representation.

37. At all times relevant hereto, Defendants acted under color of state law in its capacity as a regulatory body authorized by the State of Ohio to investigate and discipline attorneys.

38. Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, 6(A), authorizing the no-notice subpoena, substantially burdens the First Amendment right of current and prospective clients to associate with Plaintiff for the purpose of obtaining legal representation.

39. Defendants' practice of issuing no-notice administrative subpoenas to Mr. Dolfi's bank, vendors, and other third parties substantially burdens the First Amendment right of current and prospective clients to associate with Plaintiff for the purpose of obtaining legal representation.

8

40. Defendants' actions have created and will continue to create a chilling effect on the willingness of individuals to retain Plaintiff or other Ohio attorneys, as individual clients may reasonably fear that their privileged and confidential information may be disclosed to regulatory authorities under false pretenses and without notice or opportunity to object.

41. Defendants' conduct is not narrowly tailored to serve a compelling governmental interest, nor is it the least restrictive means of achieving any legitimate regulatory purpose. Defendants could have provided notice to Mr. Dolfi—and other attorneys—prior to issuing subpoenas to third parties, thereby allowing Mr. Dolfi to assert appropriate objections and protections while still permitting Defendants to conduct legitimate investigations.

42. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to damage to his professional reputation, loss of current and prospective clients, and diminished earning capacity.

**Count II – Violation of First Amendment Rights – Retaliation and Intimidation**

43. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

44. The First Amendment prohibits government actors from engaging in conduct that would chill or deter individuals from exercising their constitutional rights, including the right to associate with legal counsel.

45. Defendants' practice of aggressively investigating competitors of members of its certified grievance committee and plaintiff-side litigation attorneys by issuance of overly broad and invasive no-notice administrative subpoenas constitutes an intimidation tactic that deters individuals from retaining Plaintiff and other similarly-situated attorneys subject to Defendants' regulatory authority.

46. Defendants' conduct sends a message to current and prospective Ohio clients that their privileged and confidential information is not secure and may be disclosed to regulatory authorities at any time without any notice. This message chills the exercise of First Amendment rights and deters individuals from seeking legal representation in Ohio.

47. Defendants' conduct lacks adequate procedural safeguards and violates the constitutional requirement that governmental actions burdening First Amendment rights must be accompanied by meaningful procedural protections.

48. As a direct and proximate result of Defendants' unconstitutional conduct, Mr. Dolfi has suffered and continues to suffer irreparable harm.

**Count III – Violation of the Right to Financial Privacy Act**

49. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

50. The Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.*, imposes procedural safeguards governing the acquisition of a bank customer's financial records from a financial institution, including customer notice and an opportunity to challenge administrative or judicial subpoenas or summonses, subject to limited exceptions with judicial oversight.

51. Defendants sought and obtained Mr. Dolfi's financial records from one or more financial institutions by means of a non-judicial subpoena or subpoena-like demand without providing Mr. Dolfi with the required prior notice and without securing a valid customer authorization or a judicial order authorizing delayed notice.

52. Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, 6(A), authorizing the no-notice subpoena, violates the Right to Financial Privacy Act, as stated herein.

53. By seeking and obtaining Mr. Dolfi's financial records without compliance with the Act's notice and opportunity-to-challenge provisions, Defendants acted unlawfully and in

10

contravention of federal law. Mr. Dolfi is entitled to a declaration that the subpoena or demand was unlawful, and to equitable relief applying an exclusionary rule that prohibits Defendants from using, relying upon, or otherwise benefiting from any documents or information obtained as a result of the unlawful and fraudulent subpoena or demand. Mr. Dolfi is further entitled to civil penalties and damages as set forth in 12 U.S.C. § 3417.

### Count IV – Deprivation of Rights Under Color of State Law

54. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

55. Defendants, acting under color of state law, deprived Mr. Dolfi of rights secured by the Constitution and laws of the United States, including but not limited to (a) procedural due process under the Fourteenth Amendment by obtaining and using Mr. Dolfi's confidential financial and other records without providing the notice and opportunity to be heard required by law, and (b) statutory rights to notice and an opportunity to challenge the acquisition of financial and other records as guaranteed by federal law.

56. Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, 6(A), authorizing the no-notice subpoena, deprives Mr. Dolfi and others similarly situated, of rights secured by the Constitution and laws of the United States, including but not limited to (a) procedural due process under the Fourteenth Amendment by obtaining and using Mr. Dolfi's confidential financial records without providing the notice and opportunity to be heard required by law, and (b) statutory rights to notice and an opportunity to challenge the acquisition of financial records as guaranteed by federal law.

57. Defendants' conduct was undertaken pursuant to the Columbus Bar Association's policies, practices, or customs, and/or by individuals with final policymaking authority for the

Columbus Bar Association's concerning the issuance and enforcement of "subpoenas" or subpoena-like demands and was the moving force behind the deprivation of Mr. Dolfi's rights.

58. Mr. Dolfi is entitled to declaratory and equitable relief under 42 U.S.C. § 1983 to redress the ongoing and threatened violations described herein, including an exclusionary rule[2] prohibiting Defendants from using, relying upon, or otherwise benefiting from any documents or information obtained as a result of the unlawful subpoena.

## Prayer for Relief

Wherefore, premises considered, Plaintiff Glenn Dolfi requests that this Court enter judgment in his favor and against Defendants, Kent Markus and Holly Wolf, in their official capacities as Bar Counsel of the Columbus Bar Association and against Elizabeth T. Smith in her official capacity as Director of the Board of Professional Responsibility, as follows:

A. A declaratory judgment that Defendants' practice of issuing no-notice administrative subpoenas to third parties in connection with attorney-ethics investigations violates the First and Fourteenth Amendments to the United States Constitution.

B. A declaratory judgment that the issuance of administrative subpoenas to third parties without prior notice to the attorney who is the subject of an investigation is unlawful and unconstitutional.

C. A declaratory judgment that Defendant's no-notice subpoena practices violate the procedural due process requirements of the Fourteenth Amendment.

---

[2] In *In re Ruffalo*, the United States Supreme Court described the contours of due process as it applies in attorney-discipline proceedings and explained that "[the] absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived [****16] [the attorney in that case] of procedural due process." 390 U.S. 544, 552, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). The court stated that attorney-discipline proceedings "are adversary [*227] proceedings **of a quasi-criminal nature**" and that therefore, "[t]he charge must be known before the proceedings commence." *Id.* at 551. Disciplinary Counsel v. Reinheimer, 2020-Ohio-3941, ¶ 23, 162 Ohio St. 3d 219, 226-27, 165 N.E.3d 235, 242 (Emphasis added.)

12

D. A declaratory judgment that attorneys subject to Defendants' regulatory authority are entitled to reasonable notice and an opportunity to be heard before administrative subpoenas are issued to third parties seeking attorney-client privileged and confidential information in connection with investigations of their conduct.

E. A preliminary and permanent injunction enjoining Defendants from issuing administrative no service "subpoenas" to third parties in connection with investigations of Plaintiff without first providing Plaintiff with reasonable notice and an opportunity to be heard.

F. An award of compensatory damages in an amount to be determined at trial.

G. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

H. Such other and further relief as this Court deems just and proper.

Respectfully submitted by,

s/ Charles J. Kettlewell
Charles J. Kettlewell (0072448)
Charles J. Kettlewell LLC
445 Hutchinson Avenue, Suite 830
Columbus, Ohio 43235
Office (614) 436-2750
Fax (614) 436-2865
Charles@legalethics.pro
Trail Attorney for Plaintiff
Glenn Dolfi

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served upon the following by electronic filing and via email on March 11, 2026 to:

Kent Markus kent@cbalaw.org
Holly Wolf holly@cbalaw.org
Columbus Bar Association
230 West St #100
Columbus, OH 43215

Elizabeth Smith elizabeth.smith@bpc.ohio.gov
Ohio Board of Professional Conduct
65 South Front Street, 4th Floor
Columbus, Ohio 43215-3431

By,

s/ Charles J. Kettlewell