**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

GLENN DOLFI,

Plaintiff,

v.

HOLLY WOLF, in her official capacity as Bar Counsel for the COLUMBUS BAR ASSOCIATION; and
UNNAMED AND CURRENTLY UNKNOWN SUCCESSORS TO KENT MARKUS AND HOLLY WOLF, in their official capacities as Bar Counsel for the COLUMBUS BAR ASSOCIATION,

Defendants.

Docket No.: 26-cv-00287-EAS-CMV

Judge

Jury Demanded

**COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW, Plaintiff Glenn Dolfi, by and through undersigned counsel, and brings this Complaint against Holly Wolf, and any of Kent Markus[1] or Holly Wolf's yet unnamed and currently unknown successors, each in their official capacity as Bar Counsel for the Columbus Bar Association (collectively, the "Defendants"). In support thereof, the Plaintiff states as follows:

1. Plaintiff Glenn Dolfi is a natural person and resident of Galena, Ohio. He is licensed to practice law in the State of Ohio and maintains his practice in Columbus, Ohio. He is required by the Ohio Supreme Court Rules for the Government of the Bar to cooperate with and be subject to the Columbus Bar Association grievance committee investigations.

[1] As detailed *infr*a, Kent Markus was Bar Counsel for the Columbus Bar Association from June 2018 until June 2026, when he was either terminated or voluntarily resigned from the Columbus Bar Association. Upon information and belief, the Columbus Bar Association has not yet named a replacement for Kent Markus as Bar Counsel for the Columbus Bar Association.

2. Defendant Holly Wolf serves as Bar Counsel for the Columbus Bar Association. In her official capacity, she is charged with initiating and overseeing investigations of Columbus Bar Association members. In her discretion, she is authorized by the Ohio Board of Professional Conduct (the "Board") to file complaints for probable cause certification alleging ethics violations with the Board. Upon information and belief, her authority includes the power to issue administrative and investigative subpoenas on behalf of the Columbus Bar Association.

3. Kent Markus's and Holly Wolf's unnamed and currently unknown successors as Bar Counsel for the Columbus Bar Association have all the same rights, responsibilities, and authority as Markus and Wolf.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. This court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), as this action seeks to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this judicial district, Defendants can be found in this district, and the Plaintiff resides and practices law in this district.

## Factual Allegations

6. Glenn Dolfi is a licensed attorney in good standing with the Ohio bar and has practiced law in Columbus, Ohio since 2019. Prior to practicing law in Ohio, he was licensed to practice law in the state of Pennsylvania since 2003.

7. Since January 2023, Glenn Dolfi has owned and operated Dolfi LLC, a law firm focusing on personal injury cases.

8. Prior to starting Dolfi LLC, Glenn Dolfi was employed as an attorney at another law firm owned and operated by a former Ohio attorney, Bradley Keating.

9. From June 2018, until June 2026, Kent Markus ("Markus") served as senior Bar Counsel for the Columbus Bar Association. Defendant Wolf served under Markus as Bar Counsel for the Columbus Bar Association and acted alongside him in their official capacities as Bar Counsel for the Columbus Bar Association.

10. Markus and Wolf, through and with the authority of the Columbus Bar Association, opened an investigation into Mr. Keating in 2023, in connection with an alleged practice of paying for client referrals from a Florida entity.

11. Mr. Keating resigned his license to practice law in Ohio, with discipline pending, on June 30, 2023, thus staying any further investigation of Mr. Keating by Defendants. No adjudication or findings were reached by Markus and Wolf with respect to Mr. Keating.

12. Dissatisfied with their inability to hoist Mr. Keating's license over their mantle, Markus and Wolf turned their sights to nearly every attorney previously associated with Mr. Keating, including Glenn Dolfi.

13. In order to investigate their suspicions of Glenn Dolfi, Markus and Wolf caused to be issued over one or both of their signatures one or more "subpoenas" to PNC Bank and Kemba Financial Credit Union for Glenn Dolfi's bank accounts that he owns jointly with his wife, Angela Dolfi. **(Exhibit 1.)** Glenn Dolfi did not execute any customer authorization permitting disclosure, did not receive a copy of the subpoena or receive any notice to allow for a timely motion to quash

or otherwise challenge the demand, and he was not served with any certification of delayed notice as contemplated by federal law.

14. PNC Bank and Kemba Financial Credit Union provided Glenn Dolfi's and Angela Dolfi's financial records to Markus and Wolf, in compliance with the Defendants' "subpoena."

15. The Defendants have obtained, retained, and/or used the Plaintiff's financial records and may seek to use those records in investigative, disciplinary, or other proceedings adverse to Plaintiff's interests, all without compliance with the notice and challenge procedures mandated by federal law.

16. The Defendants have a pattern and practice of subpoenaing records that contain privileged and confidential information, including the financial records of trust and operating accounts from the financial institution during the course of their pre-complaint investigations.

17. These *sua sponte* initiated investigatory subpoenas are issued before any hearing panel or other adjudicative officer is appointed, under the signature of the Director of the Board via a pre-signed form that can be downloaded from the Board's website, because they are issued before the Defendants, the Columbus Bar Association, and/or the Board has made any probable cause finding as to any allegations or even the basis for the Defendants' *sua sponte*-initiated investigations.

18. The Defendants routinely initiate investigations into targets *sua sponte*-without any individual grievant filing a grievance against a targeted attorney. Glenn Dolfi's investigation was initiated in this manner.

19. The Defendants, as a matter of course, then issue these subpoenas to third party vendors without first providing notice to the target of the subpoenas or otherwise serving them, notwithstanding the "subpoenas" themselves say they are being served in compliance with Ohio

Civ. R. 45. In addition, these subpoenas seek the personal financial records and other records of target attorneys' spouses, family members, and current, former, and prospective clients although these persons are not subject to the oversight of the Columbus Bar Association's or the Ohio Supreme Court's disciplinary rules.

20. A target of a subpoena is only entitled to learn what subpoenas were issued and what documents were produced in response **after** the Defendants cause a complaint to be certified for probable cause. Even then, unless the petition references such pre-suit no service subpoenas, the target attorney and/or his or her clients may be forever unaware that their privileged and confidential documents were produced to the government in response to any such subpoena.

21. The Defendants' use of no-notice subpoenas appears facially authorized under color of state law which was newly adopted January 1, 2011. Appendix II, Regulation 6(A) of the Ohio Supreme Court Rules for the Government of the Bar provides that "[a] notice of subpoena is not required to be issued to the respondent unless probable cause has been found." Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, Reg. 6(A).

22. Upon information and belief, Ohio's specific language excluding and excepting notice to the target of the subpoena is wholly unique in the current rules governing disciplinary proceedings in all fifty states of the United States.

23. Moreover, this practice conflicts with the plain language of the subpoena, if not the clear implication that the subpoena is being served in compliance with Ohio Rule of Civil Procedure 45, which provides the target of the subpoena or other party an opportunity to object, move to quash, or otherwise be heard on the subpoena **prior** to requiring the recipient's response. *See* Ohio R. Civ. P. 45(C).

24. Additionally, Regulation 6(A) **also** provides that target of the subpoena may file a motion to quash, which may be "ruled upon by the chair or vice-chair of the Board," if the subpoena is issued "prior to the appointment of a hearing panel." *See* Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, Reg. 6(A).

25. The Regulations and the Rules, therefore, themselves purport to require notice and an opportunity to object in at least some circumstances. Such circumstances exist when the subpoena seeks privileged or confidential information, or records that are otherwise protected by law or the Constitution.

26. Further, upon information and belief, as a result of an even more recent 2019 amendment to Regulation 6, the Director of the Board exercises no discretion and does not even have advance knowledge of when or how these pre-signed subpoenas are utilized by bar counsel, including the Defendants, as the Director "shall issue a subpoena, signed but otherwise blank," for use by Defendants or other "special investigator." *See id.*

27. The present Director of the Board is Elizabeth T. Smith ("Ms. Smith"). Ms. Smith's name presently appears on the pre-signed, issued-in-blank subpoenas that are available online[2] evidencing there is no judicial oversight whatsoever before the issuance of these subpoenas. **(Exhibit 2.)**

28. While Glenn Dolfi does not have a copy of the issued subpoenas that target him, upon information and belief, the actual author and issuer of these subpoenas are the Defendants or Markus, and these subpoenas are not reviewed by the Board before the Defendants issue them.

[2] https://www.bpc.ohio.gov/_files/ugd/c6a571_85b87bf572fd472aadb59ea51a8fdda6.pdf

29. Upon information and belief, these pre-suit, no-notice subpoenas are frequently issued to banks, cellular providers, vendors, and other third-parties who can be identified from previously subpoenaed information.

30. On the face of these subpoenas, these third parties are compelled, under penalty of contempt "to be punished accordingly," to produce records relating to Glenn Dolfi's law practice. Such records may include evidence of client representation, client identities, attorney-client privileged communications, attorney work product, and confidential business practices. These records also include financial information and transaction histories of not only Glenn Dolfi and his firm, but also his clients.

31. Upon information and belief, while the Columbus Bar Association's use of the no-notice administrative subpoenas was initiated under the leadership of Markus, it has continued under Wolf and the Defendants.

32. The issuance of these no-notice administrative subpoenas has become known to members of the legal community and to current and prospective clients. As a direct and proximate result of the Defendants' actions, current and prospective clients have become or will become reluctant to retain Plaintiff Glenn Dolfi and other Ohio attorneys for legal representation due to concerns that their confidential information may be subject to compelled disclosure thus violating privilege and confidentiality without any notice or opportunity for either the attorney or the client to object to the State's interference with the attorney-client relationship. Ms. Smith sent a letter to one of the undersigned counsel addressing some of counsel's concerns regarding the legality, constitutionality, and privilege issues of Defendants' practice of serving no-notice subpoenas, in which she discounts any constitutionality or process concerns and indicates the intent for Ohio to proceed with the continued use of these no-notice subpoenas. **Exhibit 3**. As such, the third prong

of the exceptions to the *Younger* abstention doctrine from the U.S. Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), appears to apply in that there is under the current scheme no adequate opportunity in any state proceeding for Glenn Dolfi to raise constitutional challenges regarding the issuance of these subpoenas before they are unilaterally issued *sua sponte* by Defendants Markus and Wolf without any judicial review whatsoever.

33. Additionally, the Defendants' conduct constitutes harassment and bad faith behavior against Glenn Dolfi, which constitutes another exception to the *Younger* abstention doctrine. The Defendants or Markus attempted on no fewer than two (2) other occasions to bring disciplinary proceedings against Glenn Dolfi; however, both of these proceedings were withdrawn or dismissed without prejudice.

34. Additionally, Defendants and Markus knew that by seeking the personal financial records of Angela Dolfi and Glenn Dolfi's clients, this would harass or intimidate Glenn Dolfi and possibly cause him to settle allegations of violations of the Ohio Rules of Professional Conduct to protect his wife and clients from the Defendants' harmful subpoenas.

35. The Defendants' and Markus's conduct has had and continues to have a chilling effect on the willingness of individuals to exercise their First Amendment right to associate with Glenn Dolfi for the purpose of obtaining legal representation. This chilling effect extends not only to Glenn Dolfi's practice, but also to all other Ohio attorneys, as individuals may reasonably fear that retaining any Ohio attorney could subject their confidential and/or attorney-client privileged information to similar no-notice disclosure to third parties based upon nothing more than mere suspicion and *sua sponte* initiated investigations.

36. The attorney-client relationship is a protected associational relationship under the First Amendment. Individuals have a constitutional right to associate with legal counsel of their

choosing without fear of governmental intrusion or retaliation. The Defendants' practice of issuing no-notice administrative subpoenas to Ohio attorneys' banks, vendors, and business associates substantially burdens this constitutional right and deters individuals from freely exercising their right to legal representation in Ohio.

37. The Defendants' and Markus's actions were undertaken without adequate justification, without proper procedural safeguards, and in a manner that fails to satisfy the requirements of the First and Fourteenth Amendments.

38. Glenn Dolfi has suffered financial and reputational harm by being forced to investigate the practice of no-notice subpoenas and assert protections for his prospective and current client's financial records and not being hired by clients when they learned that his current and former clients were subjects of quasi-government investigations into their confidential financial and other records based on allegations that did not implicate these clients in wrongdoing and were made by an organization, the Columbus Bar Association, which does not exercise oversight over these clients.

## CAUSES OF ACTION

### Count I – Violation of the First Amendment Right to Freedom of Association

39. The Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

40. The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the right of individuals to freely associate for the purpose of engaging in activities protected by the First Amendment, including the right to petition the government for redress of grievances through legal representation.

41. At all times relevant hereto, the Defendants acted under the color of state law in the Columbus Bar Association's capacity as a quasi-governmental body authorized by the State of Ohio to investigate and discipline attorneys.

42. Appendix II, Regulation 6(A) of the Supreme Court Rules for the Government of the Bar of Ohio, authorizing the no-notice subpoena, substantially burdens the First Amendment right of current and prospective clients to associate with Plaintiff for the purpose of obtaining legal representation.

43. The Defendants' practice of issuing no-notice administrative subpoenas to Glenn Dolfi's bank, vendors, and other third parties substantially burdens the First Amendment right of current and prospective clients to associate with Glenn Dolfi for the purpose of obtaining legal representation.

44. The Defendants' actions have created and will continue to create a chilling effect on the willingness of individuals to retain Plaintiff Glenn Dolfi or other Ohio attorneys, as individual clients may reasonably fear that their privileged and confidential information may be disclosed to regulatory authorities under false pretenses and without notice or opportunity to object.

45. The Defendants' conduct is not narrowly tailored to serve a compelling governmental interest, nor is it the least restrictive means of achieving any legitimate regulatory purpose. The Defendants could have provided notice to the Plaintiff—or other targets of these investigations—prior to issuing subpoenas to third parties, thereby allowing the Plaintiff to assert appropriate objections and protections while still permitting the Defendants to conduct legitimate investigations.

46. As a direct and proximate result of the Defendants' unconstitutional conduct, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to damage to his professional reputation, loss of current and prospective clients, and diminished earning capacity.

**Count II – Violation of First Amendment Rights – Retaliation and Intimidation**

47. The Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

48. The First Amendment prohibits government actors from engaging in conduct that would chill or deter individuals from exercising their constitutional rights, including the right to associate with legal counsel or the right to freely engage in intimate relationships.

49. The Defendants' practice of aggressively investigating the competitors of members of the Columbus Bar Association's certified grievance committee and plaintiff-side litigation attorneys by issuing overly broad and invasive no-notice administrative subpoenas constitutes an intimidation tactic that deters individuals from retaining Glenn Dolfi and other similarly-situated attorneys subject to the Columbus Bar's regulatory authority.

50. The Defendants' conduct sends a message to current and prospective Ohio clients that their privileged and confidential information is not secure and may be disclosed to regulatory authorities at any time without any notice. This message chills the exercise of First Amendment rights and deters individuals from seeking legal representation in Ohio.

51. The Defendants' conduct lacks adequate procedural safeguards and violates the constitutional requirement that governmental actions burdening First Amendment rights must be accompanied by meaningful procedural protections. Specifically, the Defendants' investigating the spouses, family members, and clients of the attorneys against whom they launch investigations,

including Glenn Dolfi, allows the Defendants to intimidate and harass Glenn Dolfi and might cause Glenn Dolfi to agree to sanctions that his behavior did not warrant to protect Angela Dolfi and his current, former, and prospective clients against these investigations.

52. This behavior is not narrowly tailored because the Defendants are seeking the financial records and other personal records of individuals or persons who are not subject to the Defendants' regulation, oversight, and discipline, such as Angela Dolfi.

53. As a direct and proximate result of the Defendants' unconstitutional conduct, the Plaintiff has suffered and continues to suffer irreparable harm.

**Count III – Deprivation of Rights Under Color of State Law**

54. The Plaintiff realleges and incorporates by reference the foregoing paragraphs.

55. A *Monell* claim, from the U.S. Supreme Court's decision in *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978), is a claim against a local governmental entity when the entity's policies, customs, procedures, or failure to train deprives a person of their federal rights.

56. Quasi-government actors such as the Defendants are subject to *Monell* claims or other claims under the Fourteenth Amendment when their action is so entwined with the state, its conduct becomes State action.

57. The Defendants are bar counsel to a quasi-government body given authority by the Board to issue subpoenas with minimal oversight from the Board and investigate alleged disciplinary violations to bring before the Board for adjudication.

58. By issuing no-notice subpoenas as signed by the Board, the subpoenas had the force of state-issued subpoenas and implicated state action in the Defendants' disciplinary investigations.

59. The Defendants, acting under color of state law, deprived the Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to (a) procedural due process under the Fourteenth Amendment by obtaining and using the Plaintiff's confidential financial and other records without providing the notice and opportunity to be heard required by law, and (b) statutory rights to notice and an opportunity to challenge the acquisition of financial and other records as guaranteed by federal law.

60. The Defendants have engaged in the practice of issuing no-notice subpoenas with no supervision from the Board since 2011. Upon information and belief, this practice has resulted in the issuance of numerous subpoenas of the personal financial records of attorneys, attorneys' spouses, attorneys' children, and third parties that are not subject to the Rules for the Government of the Bar in the Columbus, Ohio area. The exact number of these subpoenas is unknown because the very nature of the no-notice subpoenas conceals the existence of these subpoenas from the target of a disciplinary investigation. The Defendants' practice of downloading subpoenas pre-signed by the director of the Board also means that the Board does not have records of these subpoenas or review them.

61. The Defendants tolerated and contributed to these federal rights violations against professional competitors and attorneys against whom the Defendants' private volunteer attorneys had personal animosity.

62. Supreme Court Rules for the Government of the Bar of Ohio, Appendix II, 6(A), authorizing the no-notice subpoena, deprives the Plaintiff and others similarly situated, of rights secured by the Constitution and laws of the United States, including but not limited to (a) procedural due process under the Fourteenth Amendment by obtaining and using the Plaintiff's confidential financial records without providing the notice and opportunity to be heard required

by law, and (b) statutory rights to notice and an opportunity to challenge the acquisition of financial records as guaranteed by federal law.

63. The Defendants' conduct was undertaken pursuant to the Columbus Bar Association's policies, practices, or customs, and/or by individuals with final policymaking authority for the Columbus Bar Association concerning the issuance and enforcement of "subpoenas" or subpoena-like demands and was the moving force behind the deprivation of the Plaintiff's rights.

64. The Plaintiff is entitled to declaratory and equitable relief under 42 U.S.C. § 1983 to redress the ongoing and threatened violations described herein, including an exclusionary rule[3] prohibiting the Defendants from using, relying upon, or otherwise benefiting from any documents or information obtained as a result of the unlawful subpoena.

## Prayer for Relief

Wherefore, premises considered, Plaintiff Glenn Dolfi requests that this Court enter judgment in his favor and against Defendants, Holly Wolf, in her official capacity as Bar Counsel of the Columbus Bar Association, and any unnamed and currently unknown successors of Kent Markus and Holly Wolf, as Bar Counsel of the Columbus Bar Association, in their official capacities, as follows:

A. A declaratory judgment that the Defendants' practice of issuing no-notice administrative subpoenas to third parties in connection with attorney-ethics investigations violates the First and Fourteenth Amendments to the United States Constitution.

[3] In *In re Ruffalo*, the United States Supreme Court described the contours of due process as it applies in attorney-discipline proceedings and explained that "[the] absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived [the attorney in that case] of procedural due process." 390 U.S. 544, 552, (1968). The court stated that attorney-discipline proceedings "are adversary proceedings **of a quasi-criminal nature**" and that therefore, "[t]he charge must be known before the proceedings commence." *Id.* at 551 (emphasis added) (internal citations omitted); *Disciplinary Counsel v. Reinheimer*, 2020-Ohio-3941, ¶ 23, 162 Ohio St. 3d 219, 226-27, 165 N.E.3d 235, 242.

B. A declaratory judgment that the issuance of administrative subpoenas to third parties without prior notice to the attorney who is the subject of an investigation is unlawful and unconstitutional.

C. A declaratory judgment that the Defendants' no-notice subpoena practices violate the procedural due process requirements of the Fourteenth Amendment.

D. A declaratory judgment that attorneys subject to the Defendants' regulatory authority are entitled to reasonable notice and an opportunity to be heard before administrative subpoenas are issued to third parties seeking attorney-client privileged and confidential information in connection with investigations of their conduct.

E. A preliminary and permanent injunction enjoining the Defendants from issuing administrative no service "subpoenas" to third parties in connection with investigations of Plaintiff without first providing the Plaintiff with reasonable notice and an opportunity to be heard.

F. An award of compensatory damages in an amount to be determined at trial.

G. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

H. Such other and further relief as this Court deems just and proper.

Respectfully submitted by,

/s/ Charles J. Kettlewell
Charles J. Kettlewell (0072448)
Charles J. Kettlewell LLC
1900 Polaris Pkwy, Suite 450-275
Columbus, OH 43240
614-436-2750
charles@legalethics.pro

Michael Higginbotham *(admitted pro hac vice)*
Catherine G. Norwood *(admitted pro hac vice)*

Adams and Reese LLP
6075 Poplar Avenue, Suite 700
Memphis, TN 38119
901-524-5313
901-554-5374
michael.higginbotham@arlaw.com
catherine.norwood@arlaw.com

Joshua Counts Cumby *(admitted pro hac vice)*
Adams and Reese LLP
1600 West End Avenue, Ste 1400
Nashville, TN 37203
615-259-1024
joshua.cumby@arlaw.com

James B Hadden
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
614-488-0400
hadden@mmmb.com

*Counsel for Plaintiff Glenn Dolfi*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was served upon the following by electronic filing, via email, and US Mail on August ___, 2026 to:

Holly Wolf
holly@cbalaw.org
Columbus Bar Association
230 West St #100
Columbus, OH 43215

Austin M. Richards (0101316)
Patrick Kasson (0055570)
Reminger Co. LPA
955 Yard Street, Suite 330
Columbus, OH 43212
614-228-1311
arichards@reminger.com
Pkasson@reminger.com

*Counsel for Defendant Holly Wolf*

By

/s/ Charles J. Kettlewell